**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TIRRANCE INGRAM,

    Plaintiff,

v.                                  CASE NO:  8:15-CV-1516-T-30AEP

DEALERSHIP DETAILING SPECIALISTS,
INC.,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 21) and Plaintiff's Response in Opposition (Dkt. 27). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted and final judgment should be entered in Defendant's favor.

## BACKGROUND

This is a race discrimination case under 42 U.S.C. § 1981. Plaintiff Tirrance Ingram is African-American. He was employed by Defendant Dealership Detailing Specialists, Inc. as an auto detailer for approximately four years. In Count I of the complaint, Plaintiff alleges that Defendant terminated his employment as an auto detailer because of his race. In Count II of the complaint, Plaintiff alleges that Defendant fired him out of retaliation because

Plaintiff was terminated soon after he made a comment to Defendant about two bumper stickers that were offensive to Plaintiff's race. The facts related to Plaintiff's claims now follow.

At some point after he began working for Defendant, Plaintiff noticed stickers that, in his opinion, were racially charged and offensive. One sticker was a picture of a chimpanzee with the saying "Proud of my ancestry." The sticker was placed next to another sticker of President Obama, which featured a photograph of President Obama's head beside the caption: "DOES THIS ASS MAKE MY TRUCK LOOK BIG?" (Risley deposition at Exhibits 1 and 2). Both stickers were placed on the inside door of the chemical cabinet that was located in the manager's office.

Plaintiff does not know who placed the stickers on the cabinet. According to Defendant, the stickers were put on the cabinet by another employee, Jay Cabrera, who was sticker-obsessed. Cabrera was known as "Sticker Jay" because he was a "sticker freak." "Everywhere you went, he had stickers." He obtained all of the stickers from the used cars he detailed, using his professional knowledge to remove the stickers intact and maintain their adhesive quality. (Risley deposition at 45, 52-53, 60-61).

From about June 2013, until early October 2014, Plaintiff saw the two stickers every time he went into the cabinet to obtain chemicals to perform his job. This occurred approximately one time per week. Plaintiff did not mention the offensive nature of the stickers to Charles Krisko, Defendant's owner, or Bernard Risley, Defendant's manager,

because he was afraid of being terminated. During the relevant time, Risley was Plaintiff's immediate supervisor.

On or about October 10, 2014, Plaintiff went into the chemical cabinet to retrieve supplies and saw the two stickers. At that point Plaintiff complained to Risley, who was in the office, that the pictures were racist and offensive. Specifically, Plaintiff testified as follows: "I said, [Risley], don't you think these pictures are kind of racist, offensive? And he just kind of looked at me. When he looked at me, he gave me a cue pretty much with his eyes that it wasn't him that put the pictures there. Which I knew it wasn't [Risley] that put the pictures there." (Plaintiff's deposition at 65:11-15). According to Plaintiff, he knew Risley was not responsible for the stickers because Plaintiff "knew" Risley and Risley had "never showed anything towards [Plaintiff] . . . that he would even do something like this." *Id.* at 17-22.

According to Plaintiff, in the week that followed, he felt like Krisko treated him differently. Krisko was angrier towards him. Plaintiff admitted that he did not know whether Risley told Krisko about Plaintiff's complaint about the stickers. According to Risley and Krisko, they did not discuss Plaintiff's complaint about the stickers during Plaintiff's employment.

On or about October 15, 2014, which was Plaintiff's day off, Risley called Plaintiff and asked him to report to work. When Plaintiff arrived, Risley informed Plaintiff that he was terminated. According to Plaintiff, Risley did not provide him with any reason for the termination. Risley handed Plaintiff a check and said "We're done." When Plaintiff asked

him why, Risley stated "Dude, I don't want to get into it." (Plaintiff's deposition at 80:1-5). Plaintiff then asked Krisko why he was being terminated and Krisko did not provide a reason either other than to say:"Well, in the state of Florida I don't have to tell you." *Id.* at 82:13-16.

According to Plaintiff, he was terminated because he complained to Risley about the stickers. Plaintiff sees no other reason for his termination.

According to Defendant, Plaintiff was terminated because he did not show up to work the prior day. Specifically, Risley had given Plaintiff Wednesday off and instructed Plaintiff that he had to show up to work the next day (Thursday), because Risley had a huge load to get out of action cars and needed everyone "hands-on." Thursday morning, Plaintiff did not show up to work and Risley called him and left a voice mail. Plaintiff never showed up that day and never called. Risley testified that, at that point, he was "done" with Plaintiff and made the decision to terminate him. (Risley deposition at 30-32). Plaintiff denies that he missed work, or that he had any prior attendance issues.

According to Plaintiff, other than the issue with the stickers, he did not experience any discrimination during his employment with Defendant related to his race.

Defendant now moves for summary judgment on Plaintiff's section 1981 claims.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a

conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

**I.    Plaintiff's Discrimination Claim under Section 1981**

As Defendant points out in its motion, the record reflects that Plaintiff's only claim in this case is premised on retaliation, not disparate treatment. It also appears from Plaintiff's response that Plaintiff concedes this point and is pursuing only a retaliation claim. However, even assuming that Plaintiff intends to proceed with a disparate treatment claim, the claim fails on the merits.

The essential elements of a section 1981 employment discrimination claim are the same as a Title VII employment discrimination claim. *See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1109 (11th Cir. 2001) (noting same). A plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence. *See Jackson v. Rooms To Go, Inc.*, No. 8:06-cv-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). The record is clear that there is no direct evidence of discrimination; therefore, Plaintiff must prove his claims through the familiar *McDonnell Douglas* circumstantial evidence framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case for disparate treatment, Plaintiff must establish that (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) Defendant treated similarly situated non-African American employees more favorably; and

(4) Plaintiff was qualified to do the job. *See McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).

If Plaintiff establishes a prima facie case of employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802. If Defendant meets this burden of production, the presumption of discrimination raised by Plaintiff's prima facie case is rebutted. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). Plaintiff must then show that Defendant's proffered legitimate, non-discriminatory reason is pretextual. *See id.*

To prove pretext, a plaintiff has to show that his "employer's explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005) (citing *Tex. Dep't of Cmty. Affairs,* 450 U.S. at 256). This requires showing "both that the reason was false, and that discrimination was the real reason" for the adverse action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515-16 (1993).

Defendant argues that Plaintiff cannot establish a prima facie case because Plaintiff cannot identify a comparator who was "similarly situated in all relevant respects" but was treated more favorably. *Holified v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). In response, Plaintiff concedes that he cannot identify a comparator. Plaintiff argues that a lack of comparator evidence does not "necessarily doom" his case. Plaintiff relies on the mosaic test advanced in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1341 (11th Cir. 2011). In *Smith*, the Eleventh Circuit noted that regardless of the outcome of the *McDonnell Douglas*

analysis, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id* at 1328. A triable issue of fact exists if, viewed in a light most favorable to the plaintiff, the record presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Silverman v. Bd. Of Educ.,* 637 F.3d 729, 734 (7th Cir. 2011)).

In *Smith*, the plaintiff could not establish a prima facie case of race discrimination under the *McDonnell Douglas* framework. But the plaintiff presented evidence that the paperwork in an investigation into racist emails explicitly identified employees by race. *Id.* at 1336-37, 1341, 1345-46. The plaintiff also presented evidence that he was fired along with all other employees that the paperwork identified as white, while no black employees under investigation were terminated. *Id.* at 1338-44.

In stark contrast, viewing all the evidence in a light most favorable to Plaintiff, there is no evidence of race-conscious decision-making, as there was in *Smith,* nor any other evidence substantial enough to form a convincing mosaic of circumstantial evidence of discrimination. Accordingly, Plaintiff cannot establish a prima facie case as a matter of law.[1]

---

[1] Defendant also argues that Plaintiff cannot establish a prima facie case of hostile work environment harassment. It does not appear from the record in this case, or from Plaintiff's response, that Plaintiff is alleging a hostile work environment claim. But even if Plaintiff was alleging such a claim, said claim would fail on the merits because the record lacks any evidence of pervasive and severe discriminatory treatment.

Assuming, for the sake of argument, that Plaintiff established a prima facie case of disparate treatment, Defendant points to a legitimate, nondiscriminatory reason in support of Plaintiff's termination: Defendant terminated Plaintiff because he failed to come to work. Plaintiff denies Defendant's reason and argues that the events related to him missing work never happened, but Plaintiff offers no countervailing evidence other than this general denial. This is insufficient to establish pretext. Plaintiff must also point to some evidence establishing that the real reason behind his termination was based on discriminatory animus. In other words, Plaintiff must show both that the reason was false and that discrimination was the real reason. Here, Plaintiff falls short. Indeed, the record evidence reflects that Plaintiff liked Risley, that Plaintiff did not think Risley placed the stickers on the cabinet, that Plaintiff did not view Risley as the kind of person who exhibited racist behavior, and that Plaintiff had not experienced any other incidents that were offensive to his race. Plaintiff also admits in his response that Krisko played no role in his termination.

In sum, Defendant is entitled to summary judgment on Count I of Plaintiff's complaint because Plaintiff cannot establish a prima facie case of disparate treatment. Plaintiff also points to no material evidence suggesting that racial animus was the real reason behind his termination.

## II.    Plaintiff's Retaliation Claim under Section 1981

Plaintiff argues that Defendant unlawfully retaliated against him because he was fired soon after he complained about the two stickers. Absent direct evidence of discrimination

or retaliatory discharge, Plaintiff must establish a prima facie case of retaliation, which requires the following elements: (1) Plaintiff engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009). Ultimately, Plaintiff must show that his protected activity was a but-for cause of the alleged adverse action by the employer. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533-34 (2013).

To establish protected conduct under section 1981, Plaintiff must first establish that he had a "good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies, Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir. 1997). Plaintiff's belief must not only have been "honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* The objective reasonableness of Plaintiff's complaint is determined in accordance with Eleventh Circuit precedent. *See Butler v. Ala. Dept. of Transp.,* 536 F.3d 1209, 1214 (11th Cir. 2008) ("Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable.").

Defendant argues that the record is undisputed that Plaintiff lacked a good faith belief that he was subjected to a hostile work environment based on the two stickers. The Court

agrees. Plaintiff allowed months to pass before he complained about the stickers. And, even assuming Plaintiff had a good faith belief that those stickers created a hostile work environment, Plaintiff's belief was not objectively reasonable in light of Eleventh Circuit precedent. The Eleventh Circuit has issued numerous decisions finding conduct far more frequent and severe than the conduct Plaintiff alleges to *not* rise to the level of a hostile work environment. *See Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 584-86 (11th Cir. 2000), abrogated on other grounds as recognized by *Crawford v. Carroll,* 529 F.3d 961, 974 (11th Cir. 2008); *Mitchell v. Pope,* 189 Fed.Appx. 911, 912-15 (11th Cir. 2006); *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc); *see also Webb-Edwards v. Orange Cnty. Sheriff's Office,* 525 F.3d 1013, 1027-28 (11th Cir. 2008) (finding taunting and boorish comments that were not physically threatening or humiliating were not reasonably hostile or abusive). Accordingly, because Plaintiff cannot establish that he engaged in protected activity, he cannot establish a prima facie case of retaliatory discharge, and summary judgment must be awarded in Defendant's favor.

Finally, even if the Court assumes that Plaintiff has established a prima facie case of retaliation, the claim still fails as a mater of law for the reasons explained earlier in this opinion with respect to pretext. Assuming Plaintiff's version of the facts, which this Court must do at this stage, Risley fired Plaintiff without providing any reason and without having any basis to do so because Plaintiff claims he did not fail to show up to work during the relevant time. But this just establishes that Plaintiff was fired for no reason—it does not establish that the real reason had anything to do with Plaintiff's complaint about the two

stickers. And Plaintiff points to no evidence that suggests that Risley's termination decision had anything to do with the stickers, other than to focus on the close temporal proximity, which, standing alone, is insufficient as a matter of law. *See King v. Sec'y, US Dep't of the Army*, No. 15-13001, 2016 WL 3268701, at *2 (11th Cir. June 15, 2016) ("Even if [the plaintiff] followed leave procedures, he presented no evidence outside of the temporal proximity and poor relationship he had with his supervisor to suggest that his supervisor intended to retaliate against him for engaging in protected conduct. Because a *scintilla* of evidence is not sufficient to survive summary judgment, the district court did not err in granting summary judgment in favor of [the defendant].").

In sum, Defendant is entitled to summary judgment on Count II of Plaintiff's complaint because Plaintiff does not establish a prima facie case of retaliation. Plaintiff also does not establish either pretext or that retaliation was the but-for cause of Defendant's actions.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (Dkt. 21) is GRANTED.

2. The Clerk of Court is directed to enter Final Judgment in favor of Defendant and against Plaintiff.

3.   The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on August 23, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2015\15-cv-1516 msj 21.wpd